IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| **Wesley Jenkins**, individually and on behalf of all others similarly situated,<br><br>　　　　Plaintiff,<br><br>v.<br><br>**Peabody Energy Corp.**,<br><br>　　　　Defendant. | **COLLECTIVE AND CLASS ACTION COMPLAINT AND JURY DEMAND**<br><br>Civil No.: 1:25-cv-1964 |

Plaintiff Wesley Jenkins ("Jenkins" or "Plaintiff"), individually and on behalf of all others similarly situated, files this Original Collective and Class Action Complaint against Defendant, Peabody Energy Corp. ("Peabody" or "Defendant"), showing in support as follows:

## NATURE OF THE ACTION

1. Wesley Jenkins brings this collective action to recover unpaid wages and other damages under federal Fair Labor Standards Act ("FLSA"), and under Colorado Minimum Wage Act ("CMWA"), Colorado Overtime and Minimum Pay Standards Order ("COMPS"), and Colorado Wage Claim Act ("CWCA") from Defendant, Peabody Energy.

2. Plaintiff brings this lawsuit individually and as a collective action under FLSA on behalf of other employees of Defendant who, like him, were not paid for every hour they worked and time and one-half their respective regular rates of pay for all hours worked over 40 during each seven-day workweek while working for Defendant.

3. Plaintiff also brings this lawsuit individually and as a class action under the CMWA, COMPS, and CWCA on behalf of other employees of Defendant who, like him, were

not paid for every hour they worked and time and one-half their respective regular rates of pay for all hours worked over 12 hours per day or 40 during each seven-day workweek while working for Defendant.

4. Defendant employed Jenkins as one of its Hourly Employees (defined below) in Colorado.

5. Jenkins and the other Hourly Employees regularly work more than 40 hours a workweek.

6. However, Defendant does not pay Jenkins and the other Hourly Employees for all their hours worked, including overtime hours.

7. Rather, Defendant requires Jenkins and the other Hourly Employees to suit into protective clothing and safety gear necessary to safely perform their job duties and travel into the mines also known as "donning," while on Defendant's premises, all prior to being "clocked in."

8. Likewise, Defendant requires Jenkins and the other Hourly Employees to change out of and store their safety gear and protective clothing and wash-up, also known as "doffing," while on Defendant's premises, after being "clocked out." (Defendant's "pre/post shift off the clock policy").

9. But Defendant does not pay Jenkins and the other Hourly Employees for the time they spend donning and doffing their safety gear and protective clothing, traveling into the mine, and washing-up, "off the clock," before and after their shifts.

10. Defendant's pre/post shift off the clock policy violates the Fair Labor Standards Act ("FLSA"); Colorado Minimum Wage Act ("CMWA"), Colorado Overtime and Minimum Pay Standards ("COMPS"), and Colorado Wage Claim Act ("CWCA") by depriving Jenkins and

the other Hourly Employees of overtime wages when they work in excess of 40 hours in a workweek.

**JURISDICTION & VENUE**

11. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

12. This Court has supplemental jurisdiction over Plaintiff's Colorado state claims pursuant to 28 U.S.C. § 1367 because the state claims are so related to the federal claims that they form part of the same case or controversy.

13. This Court has personal jurisdiction over Defendant based on its substantial business operations in Colorado, its substantial contacts with Colorado, and its substantial conduct directed toward Colorado, including employing Jenkins in Colorado subject to its pre/post shift off the clock policy and bonus pay scheme.

14. Venue is proper because a substantial part of the events or omissions giving rise to the claim occurred in this District and Division. 28 U.S.C. § 1391(b)(2).

15. Specifically, Defendant employed Jenkins subject to its pre/post shift off the clock policy in Craig, Colorado, which is in this District.

**PARTIES**

16. Defendant employed Jenkins as an Outby Worker from approximately May 2022 to May 2025.

17. Throughout his employment, Defendant subjected Jenkins to its pre/post shift off the clock policy.

18. Jenkins' written consent is attached as Exhibit 1.

19. Jenkins brings this collective and class action on behalf of himself and other Defendant's employees on whom Defendant imposed its pre/post shift off the clock policy.

20. The FLSA Collective of similarly situated employees are defined as:

**All Defendant's hourly employees who worked at an operation owned, operated, or controlled by Defendant during the last three years (the "FLSA Employees") before this complaint was filed up until notice is issued.**

21. The CMWA, COMPS, and CWCA Class members are defined as:

**All Defendant's hourly employees who worked at an operation owned, operated, or controlled by Defendant in Colorado during the last three years (the "Colorado Employees") before this complaint was filed up until notice is issued.**

22. Together, the FLSA Employees and Colorado Employees are referred to as the "Hourly Employees."

23. Defendant is a mining company which operates the Twentymile Mine, a surface coal mine, located in Routt County, Colorado. Defendant is headquartered in St. Louis, MO.

## FLSA COVERAGE

24. At all relevant times, Defendant was an "employer" within the meaning of the FLSA. 29 U.S.C. § 203(d).

25. At all relevant times, Defendant was an "enterprise" within the meaning of the FLSA. 29 U.S.C. § 203(r).

26. At all relevant times, Defendant was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of the FLSA because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials—such as cell phones, tools, and personal

4

protective equipment—that have been moved in or produced for commerce. 29 U.S.C. § 203(s)(1).

27. At all relevant times, Defendant had an annual gross volume of sales made or business done of not less than $1,000,000 each year.

28. At all relevant times, Jenkins and the other Hourly Employees were Defendant's "employees" within the meaning of the FLSA. 29 U.S.C. § 203(e).

29. At all relevant times, Jenkins and the other Hourly Employees were engaged in commerce or in the production of goods for commerce.

## **FACTS**

30. Peabody is the leading global pure-play coal company and a member of the Fortune 500, serving power and steel customers in more than 25 countries on six continents. It has 21 Surface and underground mines in the U.S. and Australia"[1]

31. Defendant employs about 300 employees in Twentymile Mine in Colorado[2] and about 6,600 employees across their global operations[3].

32. To meet its business objectives, Defendant employs workers, including Jenkins and the other Hourly Employees, to mine.

33. For example, Defendant employed Jenkins as an underground miner from approximately May 2022 to May 2025 in its Mine in Routt County, Colorado.

34. As a section foreman, Jenkins's primary job duties were to oversee responsible continuous mining section.

---

[1] https://www.peabodyenergy.com/Peabody/media/MediaLibrary/Fact%20Sheets/2020-Fact-sheet_Company.pdf (last accessed June 18, 2025).
[2] https://www.peabodyenergy.com/Operations/U-S-Mining/Western-Mining/Twentymile-Mine (last accessed on June 18, 2025)
[3] https://www.peabodyenergy.com/Peabody/media/MediaLibrary/Fact%20Sheets/2020-Fact-sheet_Company.pdf (last accessed June 18, 2025).

5

35. Jenkins's job duties included donning and doffing his safety gear and protective clothing, and washing up, on Defendant's premises, before and after his scheduled shifts.

36. Throughout his employment, Jenkins recorded his "on the clock" hours using Defendant's designated timekeeping system.

37. Thus, Defendant's employment records reflect the number of "on the clock" hours Jenkins recorded working each week.

38. Throughout his employment, Jenkins regularly worked more than 40 hours a workweek.

39. Indeed, throughout his employment, Jenkins typically worked approximately 12 to 17 hours a day (in other words, 60 to 70 hours a workweek) "on the clock."

40. But throughout his employment, Defendant did not pay Jenkins for all his hours worked.

41. Instead, throughout his employment, Defendant subjected Jenkins to its pre/post shift off the clock policy.

42. Specifically, Defendant required Jenkins to dress out in protective clothing and safety gear (including hard hat, head lamp, reflective clothing, ear plugs, steel toed boots, safety glasses, gloves, self-contained self-rescuer, tracker, proximity box), fundamentally necessary to performing his job and travel into the mine, all "off the clock," and without compensation.

43. This took Jenkins approximately 50-60 minutes each workday. Specifically, Jenkins was required to arrive approximately 50-60 minutes early to travel to the mine each workday, don his protective gear, and attend safety meetings, much if not all of such work time and/or waiting time after the first principal work duty was off-the-clock and thus uncompensated.

6

44. Jenkins could not perform his principal job duties in accordance with Defendant's policies, procedures, and expectations without this protective clothing and safety gear and travel into the mine.

45. Indeed, much of the gear Jenkins utilized is mandated by federal regulation. *See* 29 C.F.R. § 1910.132; 30 C.F.R. § 56, *et seq*; 30 C.F.R. § 57, *et seq*.

46. The donning of protective clothing and safety gear are therefore integral and indispensable work duties for Jenkins.

47. Likewise, Defendant required Jenkins to travel out of the mine, remove and store his safety gear and protective clothing, and wash up each day at the end of his shift, all or most of which was "off the clock" and without compensation.

48. This took Jenkins approximately 50-60 minutes each workday.

49. Jenkins could not safely perform his job duties in accordance with Defendant's policies, procedures, and expectations without removing and storing this safety gear and protective clothing and washing up each workday.

50. The removal and storage of safety gear and protective clothing and washing up each day are therefore integral and indispensable work duties for Jenkins.

51. But under its pre/post shift off the clock policy, Defendant does not compensate him for the same.

52. Thus, because of its pre/post shift off the clock policy, Defendant failed to pay Jenkins overtime wages for all his overtime hours worked during workweeks Jenkins worked in excess of 40 hours.

53. Furthermore, despite its agreement to do so, Defendant never provided or made available work-free, uninterrupted meal breaks to Jenkins.

54. Defendant likewise never provided or made available work-free, uninterrupted rest breaks to Jenkins.

55. Rather, Jenkins spent his entire workday working on behalf of Defendant for its primary benefit.

56. Jenkins and the other Hourly Employees perform their jobs under Defendant's supervision and use materials, equipment, and technology Defendant approves and supplies.

57. Defendant requires Jenkins and the other Hourly Employees to follow and abide by common work, time, pay, and overtime policies and procedures in the performance of their jobs.

58. Jenkins's and the other Hourly Employees' work must strictly adhere to the uniform standards put in place by Defendant.

59. At the end of each pay period, Jenkins and the other Hourly Employees receive wages from Defendant that are determined by common systems and methods that Defendant selects and controls.

60. Likewise, the other Hourly Employees typically record working approximately 12-17 hours a day and 5-6 days a week (60-70 hours a workweek) "on the clock."

61. But, just as with Jenkins, Defendant fails to pay them for all their hours worked.

62. Indeed, Defendant uniformly subjects the other Hourly Employees to the same or similar pre/post shift off the clock policy it imposed on Jenkins.

63. Specifically, just as with Jenkins, Defendant requires them to arrive early to work, travel to the mine, dress out in their protective clothing and safety gear (including hard hat, head lamp, reflective clothing, ear plugs, steel toed boots, safety glasses, gloves, self-contained self-rescuer, tracker, proximity box), fundamentally necessary to performing their jobs and travel into the mine, much or all such work was "off the clock," and without compensation.

8

64. And Defendant requires them to exit the mine and remove and store their safety gear and protective clothing, wash up after their shifts, and travel from the mine to the centralized location before they can leave for the day, likewise, much or all of which is "off the clock" and without compensation.

65. And like Jenkins, much of the gear they must utilize is mandated by federal regulation. *See* 29 C.F.R. § 1910.132; 30 C.F.R. § 56, *et seq*; 30 C.F.R. § 57, *et seq*.

66. But, like Jenkins, the other Hourly Employees are regularly forced to perform this compensable work "off the clock" before and/or after their shifts.

67. Thus, just as with Jenkins, Defendant does not pay the other Hourly Employees for this integral and indispensable work they are required to perform "off the clock" before and after their scheduled shifts.

68. And, just as with Jenkins, these job duties take the other Hourly Employees approximately 1 to 2 hours to complete each workday.

69. And, despite its agreement to do so, Defendant never provided or made available work free, uninterrupted meal breaks to the other Hourly Employees.

70. Defendant likewise never provided or made available to work free, uninterrupted rest breaks to the other Hourly Employees.

71. Rather, like Jenkins, the other Hourly Employees spend their entire workdays working on behalf of Defendant for its primary benefit.

72. Defendant fails to exercise its duty as the Hourly Employees' employer to ensure they are not performing work "off the clock" on its premises that Defendant does not want performed.

9

73. And Defendant knows, should know, or recklessly disregards whether Jenkins and the other Hourly Employees routinely perform integral and indispensable work "off the clock," and without compensation, before and after their scheduled shifts for Defendant's primary benefit.

74. Thus, Defendant requests, suffers, permits, or allows Jenkins and the other Hourly Employees to work "off the clock," without compensation, before and after their scheduled shifts.

75. Despite accepting the benefits, Defendant does not pay Jenkins and the other Hourly Employees for the compensable work they perform "off the clock."

76. Thus, under Defendant's uniform pre/post shift off the clock policy, Jenkins and the other Hourly Employees are denied overtime wages for the compensable work they perform "off the clock" before and after their scheduled shifts during workweeks in which they work more than 40 hours.

77. And throughout their employment, Defendant has not paid Jenkins and the other Hourly Employees at the required premium rate for all hours worked in excess of 40 in a workweek.

## FLSA COLLECTIVE ACTION ALLEGATIONS

78. Jenkins brings his claims as a collective action under Section 216(b) of the FLSA on behalf of himself and the other Hourly Employees.

79. Like Jenkins, the other Hourly Employees are victimized by Defendant's pre/post shift off the clock policy.

80. Other Hourly Employees worked with Jenkins and indicated they were paid in the same manner, performed similar work, and were subject to Defendant's same pre/post shift off the clock policy.

81. Based on his experience with Defendant, Jenkins is aware Defendant's pre/post shift off the clock policy was imposed on other Hourly Employees.

82. The Hourly Employees are similarly situated in the most relevant respects.

83. Even if their precise job duties and locations might vary, these differences do not matter for the purposes of determining their entitlement to overtime wages at the required premium rate for all overtime hours worked.

84. Therefore, the specific job titles or job locations of the Hourly Employees do not prevent collective treatment.

85. Rather, Defendant's pre/post shift off the clock policy renders Jenkins and the other Hourly Employees similarly situated for the purpose of determining their right to overtime wages at the required rate for all overtime hours worked.

86. Defendant's records reflect the number of "on the clock" hours the Hourly Employees were recorded as working each week.

87. The back wages owed to Jenkins and the other Hourly Employees can therefore be calculated using the same formula applied to the same records.

88. Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Defendant's records, and there is no detraction from the common nucleus of liability facts.

89. Therefore, the issue of damages does not preclude collective treatment.

90. Jenkins's experiences are therefore typical of the experiences of the other Hourly employees.

91. Jenkins has no interest contrary to, or in conflict with, the other Hourly Employees that would prevent collective treatment.

92. Like each Hourly Employee, Jenkins has an interest in obtaining the unpaid wages owed under federal law.

93. Jenkins and his counsel will fairly and adequately protect the interests of the Hourly employees.

94. Jenkins retained counsel with significant experience in handling complex collective action litigation.

95. Absent this collective action, many Hourly Employees will not obtain redress for their injuries, and Defendant will reap the unjust benefits of violating the FLSA.

96. Further, even if some of the Hourly Employees could afford individual litigation, it would be unduly burdensome to the judicial system.

97. Indeed, the multiplicity of actions would create a hardship to the Hourly Employees, the Court, and Defendant.

98. Conversely, concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Hourly Employees' claims.

99. The questions of law and fact that are common to each Hourly Employee predominate over any questions affecting solely the individual members.

100. Among the common questions of law and fact are:

   a. Whether Defendant imposed its pre/post shift off the clock policy on the Hourly Employees;

   b. Whether Defendant's pre/post shift off the clock policy deprived the Hourly Employees of overtime compensation for overtime hours worked; and

  c.  Whether Defendant failed to pay the Hourly Employees overtime wages at the required premium rates—based on all remuneration— for all overtime hours worked;

  d.  Whether Defendant's decision not to pay the Hourly Employees overtime wages at the required rates—based on all remuneration— for all overtime hours worked was made in good faith; and

  e.  Whether Defendant's violations were willful.

101. Jenkins knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective action.

102. As part of its regular business practices, Defendant intentionally, willfully, and repeatedly violated the FLSA with respect to Jenkins and the other Hourly Employees.

103. Defendant's pre/post shift off the clock policy deprived Jenkins and the other Hourly Employees of the overtime wages at the required premium rate—based on all remuneration—for overtime hours worked, in willful violation of the FLSA.

104. There are many similarly situated Hourly Employees who have been denied overtime pay at the required rate—based on all remuneration—for all overtime hours worked, in violation of the FLSA, who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

105. The Hourly Employees are known to Defendant, are readily identifiable, and can be located through Defendant's business and personnel records.

## RULE 23 CLASS ACTION ALLEGATIONS

106. Plaintiff incorporates the preceding paragraphs in this section.

107. Plaintiff proposes to maintain this lawsuit as a class action under Colorado Wage Act (CMWA), Colorado Overtime and Minimum Pay Standards Order (COMPS), and Colorado Wage Claim Act (CWCA) on behalf of the putative class action members, defined as follows:

> **All Defendant's hourly employees who worked at an operation owned, operated, or controlled by Defendant during the last three years (the "Colorado Employees") before this complaint was filed up until notice is issued.**

108. Plaintiff has personal knowledge that other putative Class Action Members were paid in the same manner, performed similar work, and were subject to Defendant's same pre/post shift off the clock policy.

109. The Putative Class Action Members are similarly situated to Plaintiff and to one another, within the meaning of Federal Rule of Civil Procedure 23.

110. The Putative Class Action Members are not exempt from receiving overtime premium pay under the CMWA, COMPS, and CWCA. Defendant's failure to pay regular and overtime wages results from generally applicable policies or practices and does not depend on the personal circumstances of the putative Collective Class Action Members.

111. The specific job titles or precise job responsibilities of each putative Class Action Members do not prevent class treatment.

112. Although the exact amount of damages may vary among the putative Class Action Members, their respective damages are easily calculable using a simple formula uniformly applicable to all of them.

113. Plaintiff reserves the right to establish sub-classes and/or modify class notice language as appropriate in any motion to certify a collective Class Action or other proceeding.

114. Plaintiff further reserves the right to amend the definition of the putative class, or subclasses therein, if discovery and further investigation reveal that the putative class should be expanded or otherwise modified.

## **DEFENDANT'S VIOLATIONS WERE WILLFUL**

115. Defendant knew it employed the Hourly Employees.

116. Defendant knew it was subject to the FLSA's overtime provisions and CMWA, COMPS, and CWCA overtime provisions.

117. Defendant knew Jenkins and the other Hourly Employees were its non-exempt employees entitled to overtime pay.

118. Defendant knew the FLSA and CMWA and COMPS and CWCA required it to pay non-exempt employees, including Jenkins and the other Hourly Employees, overtime wages at rates not less than 1.5 times their regular rates of pay—based on all remuneration—for all hours worked after 40 a workweek.

119. Defendant knew Jenkins and each Hourly Employee worked more than 40 hours in at least one workweek during the last 3 years because Defendant recorded their "on the clock" hours via its timekeeping system.

120. Defendant knew it paid the Hourly Employees according to its pre/post shift off the clock policy.

121. Defendant knew it had a duty to ensure the Hourly Employees were not performing work "off the clock" (without pay).

122. Defendant knew it required the Hourly Employees to don and doff safety gear and protective clothing, then travel into the mine, and wash-up, "off the clock."

123. Defendant knew it controlled the Hourly Employees' work procedures.

124. Defendant knew the Hourly Employees' mandatory "off the clock" work was a fundamental requirement of their jobs with Defendant.

125. Defendant knew the Hourly Employees' mandatory "off the clock" work was an integral and indispensable requirement to their principal job duties with Defendant.

126. Defendant knew the Hourly Employees routinely performed this daily, required "off the clock" work for Defendant's predominant benefit.

127. In other words, Defendant knew the Hourly Employees performed compensable work (e.g., donning/doffing their safety gear and protective clothing, then traveling into the mines, and washing-up) "off the clock" and without compensation.

128. And Defendant knew the FLSA, CMWA, COMPS, and CWCA required it to pay Jenkins and the other Hourly Employees at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 a workweek.

129. Defendant knew Jenkins and the other Hourly Employees regularly worked in excess of 40 hours a workweek.

130. Thus, Defendant knew, should have known, or recklessly disregarded whether it failed to pay Jenkins and the other Hourly Employees at least 1.5 times their regular rates of pay— based on all remuneration—for all the hours they worked in excess of 40 a workweek.

131. Defendant's failure to pay Jenkins and the other Hourly Employees overtime at the required rates—based on all remuneration—for all overtime hours worked was neither reasonable, nor was this decision made in good faith.

132. Defendant knowingly, willfully, and/or in reckless disregard of the FLSA, CMWA, COMPS, and CWCA carried out its unlawful pre/post shift off the clock policy that deprived Jenkins and the other Hourly Employees of overtime wages at the required rate of pay—based

on all remuneration—for all hours worked after 40 a workweek, in violation of the FLSA, CMWA, COMPS, and CWCA.

## CAUSE OF ACTION ONE
## VIOLATION OF FLSA – FAILURE TO PAY OVERTIME

133. Jenkins brings his FLSA claim as a collective action on behalf of himself and the other Hourly Employees.

134. Federal law requires covered employers to pay overtime premium pay at the rate of one and one-half times the regular rate of pay to non-exempt employees for all hours worked over forty (40) in a workweek. 29 U.S.C. § 207.

135. Defendant violated, and is violating, the FLSA by employing non-exempt employees, such as Jenkins and the other Hourly Employees, in a covered enterprise for workweeks longer than 40 hours without paying such employees overtime wages at rates not less than 1.5 times their regular rates of pay—based on all remuneration—for the hours they worked in excess of 40 a workweek.

136. Defendant's unlawful conduct harmed Jenkins and the other Hourly Employees by depriving them of the overtime wages they are owed.

137. Accordingly, Defendant owes Jenkins and the other Hourly Employees the difference between the wages actually paid and the overtime wages actually earned.

138. Defendant is also liable to Jenkins and the other Hourly Employees for an amount equal to all their unpaid overtime wages as liquidated damages.

139. Finally, Jenkins and the other Hourly Employees are entitled to recover all reasonable attorneys' fees and costs incurred in this action.

## CAUSE OF ACTION TWO
## VIOLATION OF CMWA, COMPS, and CWCA – FAILURE TO PAY OVERTIME

140. Jenkins also brings this lawsuit individually and as a class action under the CMWA and COMPS on behalf of other employees of Defendant.

141. Colorado law requires Colorado employers to pay overtime premium pay at the rate of one and one-half times the regular rate of pay to non-exempt employees for all hours worked over forty (40) in a workweek or twelve (12) hours a day. § 8-4-101, et seq., C.R.S and Rule 4 of COMPS.

142. At all relevant times, Defendant was an "employer" within the meaning of the COMPS Order. 7 C.C.R. 1103-1 ¶ 1.6.

143. Jenkins and the Hourly Employees were Defendant's "employees" as that term is defined by the COMPS Order. 7 C.C.R. 1103-1 ¶ 1.5(A).

144. Defendant violated the COMPS Order when it failed to pay Jenkins and the Hourly Employees overtime premiums for all hours worked over forty in each given workweek and for hours worked over twelve each workday. 7 CCR 1103-1¶ 4.1.1(A).

145. Defendant violated, and is violating, the CMWA and COMPS by employing non-exempt employees, such as Jenkins and the other Hourly Employees, in a covered enterprise for workweeks longer than 40 hours without paying such employees overtime wages at rates not less than 1.5 times their regular rates of pay—based on all remuneration—for the hours they worked in excess of 40 a workweek.

146. Defendant's unlawful conduct harmed Jenkins and the other Hourly Employees by depriving them of the overtime wages they are owed.

147. Accordingly, Defendant owes Jenkins and the other Hourly Employees the difference between the wages actually paid and the overtime wages actually earned.

148. Because Defendant knew, or showed reckless disregard for whether its pre/post shift off the clock policy violated the CMWA and COMPS, Defendant owes Jenkins and the other Hourly Employees these wages for at least the past 3 years.

149. Defendant is also liable to Jenkins and the other Hourly Employees for an amount equal to all their unpaid overtime wages as liquidated damages.

150. Finally, Jenkins and the other Hourly Employees are entitled to recover all reasonable attorneys' fees and costs incurred in this action.

## JURY DEMAND

151. Jenkins demands a trial by jury on all Counts.

## RELIEF SOUGHT

WHEREFORE, Jenkins, individually and on behalf of the other Hourly Employees, seeks the following relief:

    a. An order conditionally certifying this case as an FLSA collective action and a CMWA and COMPS class action and requiring notice to be issued to all putative class and collective action members;

    b. An Order finding Defendant liable to Jenkins and the other Hourly Employees for unpaid overtime wages owed under the FLSA; CMWA and COMPS, plus liquidated damages in an amount equal to their unpaid wages;

    c. A Declaration that Defendant's actions violate the FLSA; CMWA and COMPS;

   d. Judgment awarding Jenkins and the other Hourly Employees all unpaid wages, liquidated damages, statutory damages, and any and other penalties available under the FLSA; CMWA and COMPS;

   e. An Order awarding attorneys' fees, costs, and expenses;

   f. An Order awarding pre and post-judgement interest at the highest applicable rates; and

   g. Such other and further relief as may be necessary and appropriate.

DATED June 24, 2025.

               */s/ Carl A. Fitz*
               Carl A. Fitz
               Tex. State Bar No. 24105863
               FITZ LAW PLLC
               3730 Kirby Drive, Ste. 1200
               Houston, Texas 77098
               P: (713) 766-4000
               carl@fitz.legal

               AND

               Galvin Kennedy
               Texas State Bar No. 00796870
               KENNEDY LAW FIRM, LLP
               2925 Richmond Ave., Ste. 1200
               Houston, TX 77098
               Galvin@KennedyAttorney.com
               Telephone: (713) 425-6445
               Facsimile: 888-535-9271

               *Attorneys for Plaintiff And Putative Class Members*